UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY ANDERSON,

     Plaintiff,

v.

     Case No. 2:22-cv-12828
     District Judge Brandy R. McMillion
     Magistrate Judge Kimberly G. Altman

COUNTY OF WAYNE, WELLPATH
LLC, MONICA HALLAC, SHERRI
HOUGHLAND, RICHARD MILES,
ANGELO PATSALIS, and JOHN
DOES,

     Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION TO COMPEL (ECF No. 41)
AND
DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT
(ECF No. 44)**

I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Jay R.

Anderson (Anderson) claims that the defendants were deliberately indifferent to his

serious medical need and that inadequate policies resulted in him having diabetic

ketoacidosis. Anderson has sued Wayne County, Wellpath LLC (Wellpath),

Monica Hallac (Hallac), Sherri Houghland (Houghland), Richard Miles, Angelo

1

Patsalis, and twenty-five John Doe officers. (*Id.*). Both sides are represented by counsel. Before the Court are the following discovery motions:

- Anderson's motion to compel production of witnesses for deposition, productions of documents, and answers to interrogatories, (ECF No. 41), and

- Defendants' motion to strike Anderson's expert witness, (ECF No. 44).

Both motions have been referred to the undersigned. (ECF Nos. 42, 48). The undersigned held a hearing on both motions on September 5, 2024, at which time it took the motions under advisement.

For the reasons that follow, Anderson's motion to compel will be GRANTED IN PART. Wayne County and Wellpath are ordered to produce the documents described below. Anderson's request to conduct Rule 30(b)(6) depositions of representatives for those entities will be DENIED. Defendants' motion to strike Anderson's expert witness will be DENIED. If the parties need additional time to conduct expert discovery or for other proceedings, they must make that request to the district judge.

## II.    Background

On April 10, 2024, shortly after this case was reassigned to the currently assigned district judge, a scheduling order was entered setting the fact discovery deadline for April 19, 2024; the expert discovery deadline for May 30, 2024, and pretrial disclosures to be due on August 28, 2024. (ECF No. 35). A trial date was

set for November 12, 2024.  (*Id.*).  Thereafter, on April 30, 2024, the parties held a status conference with the district judge, *see* ECF No. 38, and fact discovery was extended to June 14, 2024, *see* April 30, 2024 text-only order.  The district court stated that Anderson was "granted leave to refile his motion to compel if additional discovery [did] not resolve Parties' dispute regarding depositions of corporate defendants." *Id.*

The parties were unable to resolve the underlying discovery dispute, and Anderson filed the present motion to compel.  (ECF No. 41).  The parties were ordered meet and confer and to submit a statement of resolved and unresolved issues, which they did, but no issues were resolved.  (ECF No. 56).

On July 15, 2024, defendants filed a motion to strike Anderson's expert witness, Dr. Sylvie Stacy (Dr. Stacy), based on Anderson's untimely disclosure. (ECF No. 44).  That same day, defendants filed a motion for summary judgment, which is not before the undersigned.  (ECF No. 45).  In Anderson's response to the motion for summary judgment, he argued in part that the motion should be denied because Anderson has not had a reasonable opportunity to conduct discovery. (ECF No. 51).

Additionally and relevant to some of the arguments below, the district judge has since canceled the deadlines for pretrial disclosures, motions in limine, the joint final pretrial order, the final pretrial conference, and the date for trial.  *See*

August 28, 2024 text-only order.  "The dates will be rescheduled after the Court rules on the pending motion for summary judgment."  *Id.*

### III.    Motion to Compel

### A.    Parties' Arguments

Anderson argues that defendants have not allowed representatives for Wayne County and Wellpath to be deposed even though their depositions were properly noticed.  These depositions are needed, according to Anderson, because he has made *Monell* claims against both entities and requires information on their "customs/policies/procedures" to proceed.  As noted above, the deadline for fact discovery was extended to June 14, 2024, to allow for additional discovery in the hopes that the parties could settle their dispute over whether these depositions needed to take place.

Anderson says that the discovery provided by defendants was not sufficient and that the depositions are required.  Defendants say that their interrogatory and request for production responses were sufficient and that depositions of Wayne County and Wellpath representatives would be unreasonably cumulative with the depositions already taken by the individual defendants Hallac and Houghland. They argue that the policies have already been produced and allow medical providers the autonomy to make clinical decisions and provide care to inmates within their medical judgment, as Hallac and Houghland said they did.

B.      The Discovery Requests

1.      First Interrogatories and Requests for Production (RFPs)

Anderson takes issue with a large number of interrogatory and RFP

responses from Wayne County and Wellpath, too many to include here verbatim.

From Anderson's first set of discovery, he objects to Wayne County's responses to

interrogatories 3, 4, 5, 7, 8, 9, 11 and 12, (ECF No. 41-10), and Wellpath's

responses to 3, 4, 5, 7, 8, 9, 14, 15 and 17, (ECF No. 41-11).  Interrogatories 3, 4,

and 5 to both defendants request descriptions of training for medical emergencies,

diabetic complications, and medical transfers, respectively.  Wayne County and

Wellpath responded to each as follows:

> RESPONSE: Defendants object to this interrogatory because the interrogatory is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant and not proportional to the needs of the case pursuant to Fed. R. Civ. Proc. 26. Plaintiff's request constitutes an impermissible fishing expedition. (See *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)). Furthermore, this interrogatory seeks protected private work product affecting competitive advantage. Subject to and without waiving said objections, Defendants will supplement as necessary, subject to a protective order.

Interrogatory 7 requested the identity of staff members tasked with

administering medical care to inmates; both defendants made the same boilerplate

objection as above, but provided Anderson's medical records.  Wellpath also

identified Monica Hallac, Sherri Houghland, Richard Miles, and Angelo Patsalis as

5

healthcare providers at the Wayne County Jail during Anderson's incarceration. (ECF No. 41-11, PageID.767).

Interrogatories 8 and 9 requested information on any diabetic emergencies and medical facility transfers, respectively, from January 1, 2019 through the present day, and both defendants objected with the same boilerplate objection as above, while adding that the information requested was protected by physician-patient privilege.

Interrogatories 11 and 12 to Wayne County, and 14 and 15 to Wellpath, request information on other claims of deliberate indifference or wrongful death against those defendants from January 1, 2014 to the present day, including pending investigations. Wayne County and Wellpath objected using the same language as their objections to interrogatories 8 and 9, above.

Interrogatory 17 to Wellpath requested its policies and procedures for treating incarcerated Type I diabetics who have been deprived of their insulin pumps from January 1, 2014 to the present day. (ECF No. 41-11, PageID.771). Wellpath objected in the same manner as above, which was:

> RESPONSE: Defendants object to this interrogatory because the interrogatory is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not relevant and not proportional to the needs of the case pursuant to Fed. R. Civ. Proc. 26. Plaintiff's request constitutes an impermissible fishing expedition. (See *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001); *Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007)). Furthermore, this interrogatory seeks protected private work product

affecting competitive advantage. Subject to and without waiving said objections, Defendants will supplement as necessary, subject to a protective order.

2.    Second Interrogatories and RFPs

After the discovery deadline was extended and a protective order was entered, Anderson sent a second set of discovery requests to Wayne County and Wellpath.[1] Anderson takes issue with almost every interrogatory response from Wayne County – responses 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20 – as "essentially verbatim repetitions of previously produced policies, lacking the depth and detail expected to properly discern any new or relevant information as to Mr. Anderson's treatment while incarcerated or the customs, policies, and procedures which affected his treatment while incarcerated." (ECF No. 41, PageID.671).

As for the second set of interrogatories to Wellpath, Anderson takes issue with responses to 7, 8, and 9. Interrogatory 7 requested "detailed information regarding training, including dates, the attendance of co-Defendant's Wayne County employees, and the identities of the trainers," but "Wellpath only responded with a list of training titles[.]" (ECF No. 41, PageID.672). Interrogatory 8 requested the "policy or procedure" for if less than 75% of the

---

[1] Many of Wayne County and Wellpath's objections to the first set of discovery requests stated that policies would be produced if a protective order were in place.

custody staff were "current in their health related training." (ECF No. 41-28, PageID.876). Wellpath responded that "[t]he RHA/HSA or designee, in conjunction with the Facility Administrator or designee, will ensure that at least 75% of all custody staff on each shift are current in their health related training." (*Id.*, PageID.877). Interrogatory 9 stated: "Explain the policy or procedure employed during the 'annual review of competency' as referenced in Wellpath Document Production, p. 13." (*Id.*). Wellpath objected that Anderson had requested more than twenty-five interrogatory responses at that point, but also answered that "defendants are not in possession of readily available information responsive to this interrogatory." (*Id.*). Anderson says that Wellpath's interrogatory 12 response was similarly non-responsive as Wellpath failed to delineate the repercussions for failure to comply with the policies and procedures previously produced.

Anderson also argues—after having received documents in response to his first set of RFPs which included Wellpath's policies and procedures—that his second set of RFPs to Wellpath should have resulted in more documents relating to policies regarding diabetic care, which Wellpath withheld as "seek[ing] protected private work product affecting competitive advantage" and "exceed[ing] the currently limited scope of discovery." (*Id.*, PageID.880-886).

C.     Legal Framework

8

1.    Written Discovery

The scope of discovery, which permits a party to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," is always subject to being "limited by court order[,]" and thus, within the sound discretion of the Court.  Fed. R. Civ. P. 26(b)(1); *see also State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D. Mich. 2017) ("Further, a court has broad discretion over discovery matters, and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion.") (internal citation omitted).  Discovery is more liberal than even the trial setting, as Rule 26(b) allows discovery of information that "need not be admissible in evidence."  Fed. R. Civ. P. 26(b)(1).

If a party believes that another party is not complying with discovery requests, then it may file a motion to compel.  Motions to compel are governed by Fed. R. Civ. P. 37(a)(3)(B), which states, "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."

9

2.     Depositions

Rule 30 provides broad access to persons for depositions.  Fed. R. Civ. P.

30(a).  Rule 30(b)(6) governs subpoenas directed to organizations, which are at

issue here.  It states that,

> a party may name as the deponent a public or private corporation, a
> partnership, an association, a governmental agency, or other entity and
> must describe with reasonable particularity the matters for examination.
> The named organization must designate one or more officers, directors,
> or managing agents, or designate other persons who consent to testify
> on its behalf; and it may set out the matters on which each person
> designated will testify.
>
> * * *
>
> The persons designated must testify about information known or
> reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

"[A] party is not entitled to take a Rule 30(b)(6) deposition."  *Furguson v.

Metlife Invs. USA Ins. Co.*, No. 22-CV-12772, 2024 WL 379907, at *4 (E.D. Mich.

Jan. 31, 2024).  "Relying on Rule 26(b)(1), Rule 26(b)(2), and Rule 30(b)(6),"

courts may "quash or limit Rule 30(b)(6) depositions."  *Edwards v. Scripps Media,

Inc.*, 331 F.R.D. 116, 122 (E.D. Mich. 2019) (cleaned up).  When the Rule 30(b)(6)

deposition is sought to probe only the opposing party's legal theories and

conclusions, rather than factual matters, the deposition is usually unnecessary and

may be quashed *via* Rule 26.  *See JPMorgan Chase Bank v. Winget*, No. 08-1345,

2016 WL 7242136, at *4 (E.D. Mich. Dec. 15, 2016) . A corporation may also

show that the record is fully developed on a topic so that the Rule 30(b)(6)

10

deposition would be "unreasonably duplicative and cumulative." *See Edwards*,

331 F.R.D. at 121 (citation omitted).

D.    Discussion

Anderson's issues with virtually every interrogatory response to his first and

second sets of interrogatories are unwarranted. Wayne County and Wellpath have

responded to the interrogatories with the information readily available to them, and

to the extent that their objections have included boilerplate, this fact does not

provide cause for compelling further answers.

It is true that "[b]oilerplate or generalized objections are tantamount to no

objection at all and will not be considered by the Court." *Strategic Mktg and Rsch.*

*Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-cv-12695, 2017 WL 1196361, at *2

(E.D. Mich. Mar. 31, 2017). However, Wayne County and Wellpath have

supplemented their boilerplate objections to the interrogatories with specific

objections tailored to the specific interrogatories at hand, and have either provided

information pursuant to the interrogatories or withheld it for various valid reasons,

such as the information not being available or being unnecessarily cumulative

and/or not proportional to the needs of the case. For instance, the identities of all

relevant healthcare providers during Anderson's incarceration have been provided,

and the interrogatory requests for information regarding other diabetic emergencies

and inmate transfers to medical facilities are impermissible "fishing" that is "too

11

broad" given that Anderson has provided no known indication that other inmates have been similarly treated. *See Surles v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588, 592 (5th Cir. 1978)). Also, "[t]he Court 'cannot compel a party to provide information that he or she does not possess any more than it can compel that party to produce documents that do not exist or are *not in his possession, custody or control.*' " *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 639 (E.D. Mich. 2021) (quoting *Roden v. Floyd*, No. 2:16-cv-11208, 2019 WL 1098918, at *3 (E.D. Mich. Mar. 8, 2019)) (emphasis added).

On the other hand, responses to some of Anderson's second set of RFPs to Wayne County and Wellpath will be compelled, because the objections that they "seek[] protected private work product affecting competitive advantage" and "exceed[] the currently limited scope of discovery" do not justify withholding production. *See, e.g.*, ECF No. 41-27, PageID.860. The second RFPs to Wayne County include training materials provided at entry level and in-service trainings and must be produced, as there is a protective order in place to protect the defendant's "competitive advantage" and such materials do not exceed the scope of discovery necessary for Anderson to pursue his *Monell* claim. These are RFPs 1, 2, 4, 5, 7 and 8. (ECF No. 41-27, PageID.860-863). Wayne County should also provide the requested documents specifically related to Anderson in RFPs 9 and

10, as Wayne County did not object that it does not possess these documents and they are relevant and proportional to the needs of the case.  (*Id.*, PageID.863-864).

As for Wellpath, it should be compelled to produce the documents referenced in Anderson's second RFPs 4, 5, 6, 8, 11, 12, 13, 14, 15, 16, and 17. Wellpath's objections to these requests are pure boilerplate and do not "seek[] protected private work product affecting competitive advantage" or "exceed[] the currently limited scope of discovery."  *See* ECF No. 41-28, PageID.880-886.  The requested documents in these RFPs are referenced in other materials already provided by Wellpath and may shed light on Wellpath's liability under *Monell*, if any.

Wayne County and Wellpath shall have thirty (30) days to comply with this order.  Anderson's request to extend the discovery deadline will be denied, given that the remaining deadlines in this case have been canceled.

As to the request for Rule 30(b)(6) depositions, under this ruling, Anderson will have the relevant policies to pursue his *Monell* claim.  Therefore, Rule 30(b)(6) depositions would at that point be unnecessarily cumulative given that the depositions of Hallac and Houghland that have already taken place.  Thus, at this time, "[p]laintiffs have failed to provide a factual basis supporting their contention that [the Rule 30(b)(6)] deposition[s] could produce relevant information to bolster their *Monell* claim[.]"  *Mitchell v. Arnold*, No. 3:20-CV-00530-DJH, 2023 WL

13

7711478, at *5 (W.D. Ky. Nov. 15, 2023).  Therefore, Anderson's request to take

those depositions is denied.

E.    Required Production

In sum, the required production is as follows:

**<u>Wayne County</u>**

2nd RFP 1. Provide copies of all manuals, guides, training documents, power point slides, handouts, or other materials provided to employees during their Entry Level Training referenced in Wayne County Document Production, p. 001 from June 2019 to August 2021.

2nd RFP 2. Provide copies of all manuals, guides, training documents, power point slides, handouts, or other materials provided to employees during their In-Service Training referenced in Wayne County Document Production, p. 001 from June 2019 to August 2021.

2nd RFP 4. Provide copies of the annual in-service training plan referenced on Wayne County Document Production p. 001 for years 2019 through 2021.

2nd RFP 5. Provide a copy of the Jail Policy and Procedures referenced in Wayne County Document Production, p. 002, Section (C)(2)(g).

2nd RFP 7. Provide all documents distributed to trainees in the trainings listed in Interrogatory 12 regarding medical in-service trainings, as referenced in Wayne County Document Production p. 003, Section (C)(4), which occurred between June 2019 and August, 2021.

2nd RFP 8. Provide all documents distributed to trainees in the trainings listed in Interrogatory 13 regarding Jail Policies and Procedures, as referenced in Wayne County Document Production p. 003, Section (C)(4), which occurred between June 2019 and August, 2021.

**<u>Wellpath</u>**

2nd RFP 4. Provide copies of all documents referenced in "7. REFERENCES" in Wellpath Document Production, p. 003.

14

2nd RFP 5. Provide copies of all documents referenced in "7. REFERENCES" in Wellpath Document Production, p. 007.

2nd RFP 6. Provide a copy of the "written plan(s)" referenced in "6. PROCEDURE." As referenced in Wellpath Document Production, p. 005.

2nd RFP 8. Provide copies of all given to trainees in the "Annual training" referenced in Wellpath Document Production p. 006, Sub. 6.2, regarding diabetic inmates, from January 2019 through August, 2021.

2nd RFP 11. Provide a copy of the "Wellpath Professional Nursing Protocols" as referenced in "3. POLICY" as referenced in Wellpath Document Production, p. 011 that were in place in November, 2019.

2nd RFP 12. Provide a copy of the "Wellpath Professional Nursing Protocols" as referenced in "3. POLICY" as referenced in Wellpath Document Production, p. 011 that were in place in July, 2021.

2nd RFP 13. Provide copies of all documents referenced in "7. REFERENCES" in Wellpath Document Production, p. 056.

2nd RFP 14. Provide a copy of the "clinical protocols" regarding "diabetes" which are referenced in Wellpath Document Production, p. 057, sub. "5. PROCEDURE," para. 5.1, sub. 5.1.2.

2nd RFP 15. Provide all copies of the form provided in Wellpath Document Production, p. 060 through p. 063 regarding Jay Anderson, DOB 4-14-1980.

2nd RFP 16. If the documents provided in the Wellpath Document Production were archived prior to November, 2019, provide copies of all policies and procedures which were in effect in November/December 2019 and July 2021.

2nd RFP 17. Provide curriculum vitaes for all individuals who served as "Responsible Health Authority (RHA)/Health Services Administrator (HSA)" as outlined in interrogatories No. 3 and 4.

IV.    Motion to Strike Plaintiff's Expert

A.    Parties' Arguments

Also before the Court is defendants' motion to strike Anderson's expert, Dr. Stacy.  (ECF No. 44).  The deadline for *expert discovery* was May 30, 2024, by way of a joint motion to extend the remaining scheduling order dates.  (ECF No. 30).  Upon the transfer of this case to a different district judge, that date was reiterated in a subsequent scheduling order.  (ECF No. 35).  The deadline for *expert witness disclosures* was February 1, 2024.  (ECF No. 24).  Defendants say that Anderson identified Dr. Stacy as an expert witness on May 30, 2024, the last day for expert discovery and well after the deadline for disclosures.  (ECF Nos. 44-5, 44-6).

The parties agree that the relevant standard for whether the requested sanction should apply turns on whether the late disclosure was "substantially justified" or "harmless[.]"  *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citing Fed. R. Civ. P. 37, 1993 advisory committee's note).  This, in turn, requires the consideration of the following five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.*

Each party argues that the factors weigh in their favor.

## B.    Discussion

1.    Surprise

Anderson argues that Dr. Stacy's report "should be of no surprise to the defendants[,]" given that the facts already known to both parties point to defendants' obvious culpability.  (ECF No. 47, PageID.1332).  However, given that no expert witness was disclosed at the time disclosures were due, and that Anderson did not indicate use of an expert until his counsel's email six days prior to the expert discovery deadline, (ECF No. 44-5), the "surprise" factor weighs in favor of striking the witness.

2.    The Ability to Cure

Although the surprise factor favors defendants, Anderson is correct that the surprise itself is eminently curable.  Defendants argue that "reopening discovery would reward plaintiffs for their inability to obey the district court's orders while punishing defendants."  *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 670 (6th Cir. 2024).  However, *RJ Control Consultants* is a 2024 decision in a case that began in 2016, where the district court had found that "reopening discovery would cause disruptions" due to that court's calendar restrictions.  There are no indications of any such restrictions here.  In fact, as has been explained above, the deadlines in this case have been adjourned.  Further, while allowing late disclosures may in some cases cause defendants "to bear the effort and expense necessary to cure [the plaintiff's] failure to disclose, which would arguably reward

17

[the plaintiff] for its untimeliness and does nothing to deter similar conduct from future litigants[,]" *id.* (*quoting EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019) (internal quotations omitted)), here, defendants have not identified any substantial costs that would not otherwise have been borne had the disclosure been timely.  The undersigned therefore finds that the ability to cure the late disclosure weighs in favor of allowing the expert witness to be admitted.

3.    Trial Disruptions

Defendants argue that reopening discovery would "certainly disrupt trial." They note that while the trial date for this case is November 12, 2024, pretrial disclosures were due August 28, 2024, motions in limine were due September 27, 2024, and the final pretrial conference was set for October 28, 2024.  (ECF No. 50, PageID.1361).  However, as stated above, these deadlines are no longer in place. Anderson contends that the parties "are still in the midst of motion practice," (ECF No. 47, PageID.1333), and that given the additional production defendants are ordered to produce, admitting the late disclosure would not cause any additional disruption.

This factor favors Anderson.  A trial and other dates are no longer scheduled, nor will they be imminent.  Further, no harm has been demonstrated should the

trial and other dates require extension.  Some disruption may result in allowing Dr. Stacy to be considered an expert witness, but it does not appear to be substantial.

### 4.      Importance of the Evidence

The importance of the evidence is apparent, as defense counsel admitted at the hearing that their summary judgment motion would likely be moot if this motion was denied, and defendants do not dispute that Dr. Stacy would be an important witness for Anderson.  They argue, however, that "this factor can cut both ways."  *RJ Control Consultants, Inc.*, 100 F.4th 659, 670 (quoting *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019)).  "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure."  *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017), *objections overruled sub nom. EQT Prod. Co. v. Magnum Hunter Prod. Co.*, 2017 WL 4974782 (E.D. Ky. July 19, 2017).

Under defendants' interpretation, the Sixth Circuit guidance would make this factor neutral under almost any circumstances.  However, given that *Howe* found that the "crucial" nature of the evidence weighed in favor of its inclusion, the Court finds the same here.  Thus, this factor weighs against striking Dr. Stacy as an expert witness.

### 5.      Failure to Disclose

Lastly, the Court must consider Anderson's reason for the late disclosure.  As explained in her brief and further elaborated on at the hearing, Anderson's counsel was rendered unable to work for approximately a month starting around January 27, 2024, due to multiple COVID-19 infections and her son's surgery and recovery period around the same time.  (ECF No. 47, PageID.1335).  While defendants are sympathetic to Anderson's counsel, they argue that Anderson had the opportunity to find an expert witness since the filing of the complaint on November 21, 2022, if not before, and had additional time in March, April, and May of 2024 to find and disclose his expert witness as well.

Understandably, Anderson's counsel faced a backlog of work on multiple cases following her and her son's recovery, and she notes that defendants are not entirely innocent either; by delaying production of their own discovery, some of which was provided late, additional time was needed to assess the medical evidence before an expert witness could be obtained.  On this factor, the lateness of Anderson's disclosure was not entirely unavoidable, but counsel's illness and other reasons for delay occurring at the time expert disclosures were due weighs against striking the expert witness.

### 6.    Other Arguments

Defendants argue that Anderson's disclosure was not only late, but also incomplete, because the expert report did not contain exhibits of sources that were

clearly used in the formulation of her opinion as required by Rule 26(a)(2)(B)(iii).

However, Anderson notes that courts in this district have not read this rule to

include "materials generally referenced" by the expert witness. *See Meirs v.*

*Ottawa Cnty.*, No. 1:15-CV-866, 2018 WL 9815859, at *2 (W.D. Mich. Jan. 8,

2018), *In re Dow Corning Corp.*, No. CIV.A. 05-30133-DT, 2011 WL 4537061, at

*4 (E.D. Mich. Sept. 30, 2011).

Defendants argue that these cases are unpublished and not binding upon this

Court and that they go against the language of Rule 26(a)(2)(B)(iii), which requires

that all sources used by the expert witness be provided.  This argument does not

carry the day.  As the courts in *Meirs* and *In re Dow Corning Corp.* held, exhibits

are not required.  Here, Dr. Stacy's report provided citations to the sources

generally used in Dr. Stacy's opinion, and that is sufficient.[2]

Given the analysis above, the Court finds that the *Howe* factors weigh

against striking the expert witness.  Should this result in the need for additional

discovery, the parties may request dates they deem appropriate from the district

judge.

V.    Conclusion

---

[2] Defendants also argue, and Anderson seems to admit, that Rule 26(a)(2)(B)(v)—
requiring "a list of all other cases in which, during the previous 4 years, the witness
testified as an expert at trial or by deposition,"—was not followed.  Anderson says
that this information can be provided during the additional discovery period.
Assuming this information will be provided, that will cure the deficiency.

For the reasons stated above, Anderson's motion to compel, (ECF No. 41), is GRANTED IN PART. Wayne County and Wellpath shall comply with the production outlined above within thirty (30) days of this order. Anderson's request for Rule 30(b)(6) depositions is DENIED.

Defendants' motion to strike Anderson's expert witness, (ECF No. 44), is DENIED.

SO ORDERED.

Dated: September 10, 2024                    s/Kimberly G. Altman
Detroit, Michigan                            KIMBERLY G. ALTMAN
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 10, 2024.

                                             s/Julie Owens
                                             Julie Owens
                                             Case Manager